1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   NINOSKA CALDERA,

11            Plaintiff,                    No. 2:12-cv-1301-EFB

12        vs.

13   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
14
              Defendant.                    <u>ORDER</u>
15   _____/

16        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

17   ("Commissioner") denying her applications for a period of disability and Disability Insurance

18   Benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the

19   Social Security Act.  The parties' cross-motions for summary judgment are pending.  For the

20   reasons discussed below, the court grants plaintiff's motion, denies the Commissioner's motion,

21   and remands the matter for further proceedings.

22   I.        <u>BACKGROUND</u>

23        Plaintiff filed applications for a period of disability, DIB, and SSI benefits on March 3,

24   2008, alleging that she had been disabled since October 15, 2006.  Administrative Record

25   ("AR") 53-56.  Plaintiff's applications were initially denied on June 18, 2008, and upon

26   reconsideration on September 5, 2008.  *Id*. at 57-59.  On March 1, 2010, a hearing was held

1

1    before administrative law judge ("ALJ") Robert C. Tronvig, Jr.  *Id.* at 23-52.  Plaintiff was

2    represented by counsel at the hearing, at which she testified.  *Id.*

3          On June 30, 2010, the ALJ issued a decision finding that plaintiff was not disabled under

4    sections 216(I), 223(d), and 1614(a)(3)(A) of the act.[1]  *Id.* at 11-19.  The ALJ made the following

5    specific findings:

6          1.    The claimant meets the insured status requirement of the Social Security
                 Act through December 31, 2011.

7
           2.    The claimant has not engaged in substantial gainful activity since October
8                15, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et
                 seq.*).

9
                 * * *
10

_____

11         [1] Disability Insurance Benefits are paid to disabled persons who have contributed to the
     Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid
12   to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Under both provisions,
     disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to
13   "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) &
     1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R.
14   §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The
     following summarizes the sequential evaluation:
15
                 Step one:  Is the claimant engaging in substantial gainful
16          activity?  If so, the claimant is found not disabled.  If not, proceed
            to step two.
17               Step two:  Does the claimant have a "severe" impairment?
            If so, proceed to step three.  If not, then a finding of not disabled is
18          appropriate.
                 Step three:  Does the claimant's impairment or combination
19          of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
            404, Subpt. P, App.1?  If so, the claimant is automatically
20          determined disabled.  If not, proceed to step four.
                 Step four:  Is the claimant capable of performing his past
21          work?  If so, the claimant is not disabled.  If not, proceed to step
            five.
22               Step five:  Does the claimant have the residual functional
            capacity to perform any other work?  If so, the claimant is not
23          disabled.  If not, the claimant is disabled.

24   *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25         The claimant bears the burden of proof in the first four steps of the sequential evaluation
     process.  *Yuckert,* 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
26   evaluation process proceeds to step five.  *Id.*

3.    The claimant has the following medically determinable impairment: bipolar disorder and polysubstance abuse in early remission (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

4.    The claimant does not have an impairment or combination of impairments that has significance limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*)

* * *

5.    The claimant has not been under a disability, as defined in the Social Security Act, from October 15, 2006, through the date of this decision (20 CFR 404.1520(c) and 416.920(c)).

*Id.* at 13-18.

Plaintiff requested that the Appeals Council review the ALJ's decision, *id.* at 11-13, and on November 18, 2011, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner.  *Id.* at 1-3.

II.    LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

3

2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III.    ANALYSIS

Plaintiff's argues that the ALJ erred at step two by finding that her bipolar disorder was

not severe. Pl.'s Mot. for Summ. J., ECF No. 13.[2]  "The step-two inquiry is a de minimis

screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th

Cir. 1996).  The purpose is to identify claimants whose medical impairment is so slight that it is

unlikely they would be disabled even if age, education, and experience were taken into account.

*Yuckert*, 482 U.S. at 153.  At step two of the sequential evaluation, the ALJ determines which of

claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c).

"An impairment is not severe if it is merely 'a slight abnormality (or combination of slight

abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'"

*Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR")

96–3p (1996)).  The step two severity determination is "merely a threshold determination of

whether the claimant is able to perform his past work.  Thus, a finding that a claimant is severe

at step two only raises a prima facie case of a disability."  *Hoopai v. Astrue*, 499 F.3d 1071, 1076

(9th Cir. 2007).

At the second step plaintiff has the burden of providing medical evidence of signs,

symptoms, and laboratory findings that show that his or her impairments are severe and are

expected to last for a continuous period of twelve months.  *Ukolov v. Barnhart*, 420 F.3d 1002,

1004–05 (9th Cir. 2005); *see also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909,

416.920(a)(4)(ii).  An ALJ's finding that a claimant is not disabled at step two will be upheld

/////

_____

[2]  The page numbers cited herein refer to those assigned by the court's electronic filing
system and not those assigned by the parties.

4

1  where "there are no medical signs or laboratory findings to substantiate the existence of

2  medically determinable physical or mental impairment." *Ukolov*, 420 F.3d at 1005.

3        Pursuant to the analytical procedure prescribed by the regulations, after the ALJ

4  determines that the claimant has a medically determinable mental impairment, he then rates the

5  degree of the claimant's functional limitations in four areas, known as the "B Criteria":  (1)

6  activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4)

7  episodes of decompensation.  20 C.F.R. § 1520a(b)-(c); *see also* Pt. 404, Subpt. P, App. 1, 12.00

8  Mental Disorders.  In the first three areas, the ALJ rates the limitations as either none, mild,

9  moderate, marked, or extreme.  The fourth functional area, episodes of decompensation, is rated

10 on a four point scale of none, one or two, three, and four or more.  20 C.F.R. 404.1520a(c)(3)

11 and (4).  If a severe impairment exists, all medically determinable impairments must be

12 considered in the remaining steps of the sequential analysis.  20 C.F.R. § 404.1523.  The ALJ

13 "must consider the combined effect of all of the claimant's impairments on her ability to

14 function, without regard to whether each alone [i]s sufficiently severe."  *Smolen*, 80 F.3d at

15 1290; 20 C.F.R. § 404.1523.

16       The ALJ followed this analytical procedure in this case and determined that plaintiff's

17 bipolar disorder and polysubstance abuse in early remission were not severe.  The ALJ

18 specifically found that plaintiff had only mild restrictions in the first three functional areas, and

19 only one episode of decompensation of extended duration.  AR 18.  With regard to daily

20 activities and social functioning, the ALJ observed that plaintiff's activities included "helping

21 clean the church she lived in, taking walks, shopping, watching television, going to church,

22 visiting family, doing laundry, personal care, doing yard work, cooking, paying bills, reading,

23 drawing, sewing, playing softball, talk[ing] on the phone, and using the computer."  *Id*. at 17.

24 These findings are supported by a functional report questionnaire that plaintiff completed.  *Id*. at

25 151-157.

26 /////

1    The ALJ also relied on multiple medical opinions in finding that plaintiff only had mild

2    limitations in daily activities; social functioning; and concentration, persistence, and pace.  On

3    May 16, 2008, Dr. Canty performed a psychiatric evaluation on behalf of the Social Security

4    Administration.  *Id*. at 181-184.  Plaintiff reported to Dr. Canty that she was not currently

5    receiving mental health treatment.  *Id*. at 181.  Plaintiff also reported that she handles her own

6    chores and money and that she socializes with her mother and children.  *Id*. at 182.  Plaintiff was

7    well groomed; had clear speech; her thought content was clear, logical and goal-directed; and

8    she was slightly irritated with an appropriate affect.  *Id*.  Dr. Canty diagnosed plaintiff with

9    polysubstance abuse in remission in controlled environment.  *Id*. at 183.  Based on his

10   examination, Dr. Canty opined that plaintiff did not have significant problems outside of

11   substance abuse.  *Id*. at 184.  He further opined that plaintiff did not have any psychiatric

12   limitations to work.  *Id*.  However, he opined that plaintiff's substance abuse would continue to

13   be an issue and that plaintiff will likely relapse given her current attitude.  *Id*.

14   The ALJ also relied on the opinion of Dr. Stern, a state agency psychologist, who

15   concluded that plaintiff's mental impairments were not severe.  *Id*. at 196.  Based on his review

16   of the evidence, Dr. Stern opined that plaintiff has only mildly limited in activities of daily

17   living, maintaining social functioning, and maintaining concentration, persistence or pace.  *Id*. at

18   194.  Plaintiff's medical records were also reviewed by Dr. Hurwitz, a non-examining physician.

19   On August 20, 2008, Dr. Hurwitz affirmed Dr. Stern's opinion that plaintiff did not have any

20   severe mental impairments.  *Id*. at 211.  These three medical opinions, all finding that plaintiff's

21   impairments were not severe and caused no more than mild limitations, support the ALJ's step-

22   two determination.  *Tonapetyan v. Halter*, 242 F.3d 1144,1149 (9th Cir. 2001) (an examining

23   physician's opinion alone constitutes substantial evidence where it rests on the physician's own

24   independent examination); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) ("[T]he findings of

25   a nontreating, nonexamining physician can amount to substantial evidence, so long as other

26   evidence in the record supports those findings.").

1    The record, however, also contains an opinion from Dr. Regazzi, Ph.D., an examining

2    psychologist.  Dr. Regazzi performed a psychological evaluation on February 25, 2010.  AR

3    280-284.  She diagnosed plaintiff with Psychotic Disorder, Not Otherwise Specified (controlled

4    with medication), and Mood Disorder, Not Otherwise Specified.  *Id*. at 284.  Dr. Regazzi

5    indicated that plaintiff produced an elevated score on the Infrequency Scale of the Minnesota

6    Multiphasic Personality Inventory, which "raises concern about possible exaggeration of

7    symptoms."  *Id*. at 283.  She opined that plaintiff had no limitations in understanding,

8    remembering and carrying out simple instructions and mild limitations in interacting

9    appropriately with supervisors and coworkers.  Importantly, she also opined that plaintiff had

10   moderate limitations in understanding, remembering, and carrying out complex instructions;

11   maintaining adequate pace; maintaining attention and concentration; withstanding the stress of a

12   routine workday; communicating effectively with others; and interacting appropriately with the

13   public.  *Id*. at 284.

14   The ALJ provided a summary of Dr. Regazzi's findings and opinion.  Although Dr.

15   Regazzi found that plaintiff had more than mild impairments in a number of categories, as

16   plaintiff observes the ALJ did not specifically address what weight he provided this opinion.

17   ECF No. 13 at 11.  Because Dr. Regazzi's opinion contradicted the ALJ's findings that

18   plaintiff's impairments caused no more than mild limitations in social functioning and

19   concentration persistence and pace, it appears the ALJ implicitly rejected portions of Dr.

20   Regazzi's opinion.

21   The weight given to medical opinions depends in part on whether they are proffered by

22   treating, examining, or non-examining professionals.  *Lester v. Chater*, 81 F.3d 821, 830 (9th

23   Cir. 1996).  Ordinarily, more weight is given to the opinion of a treating professional, who has a

24   greater opportunity to know and observe the patient as an individual.  *Id.*; *Smolen v. Chater*, 80

25   F.3d 1273, 1285 (9th Cir. 1996).  To evaluate whether an ALJ properly rejected a medical

26   opinion, in addition to considering its source, the court considers whether (1) contradictory

1  opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an

2  uncontradicted opinion of a treating or examining medical professional only for "clear and

3  convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or

4  examining professional may be rejected for "specific and legitimate" reasons that are supported

5  by substantial evidence.  *Id*. at 830.  While a treating professional's opinion generally is

6  accorded superior weight, if it is contradicted by a supported examining professional's opinion

7  (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.

8  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d

9  747, 751 (9th Cir. 1989)).  However, "[w]hen an examining physician relies on the same clinical

10  findings as a treating physician, but differs only in his or her conclusions, the conclusions of the

11  examining physician are not 'substantial evidence.'"  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir.

12  2007).

13       Defendant contends that the ALJ reasonably relied on the opinion of Drs. Canty, Stern

14  and Hurwitz over the contradictory opinion of Dr. Regazzi because Dr. Regazzi noted a concern

15  about the possibility of exaggeration of symptoms.  ECF No. 16 at 9.  While the ALJ's summary

16  of Dr. Regazzi included her concern about possible exaggeration of symptoms, nowhere in the

17  ALJ's analysis and statement of reasons for the decision are there any statement that this was the

18  reason for rejecting Dr. Regazzi's opinion.[3]  Rather, as plaintiff observes, the ALJ simply

19  summarized Dr. Regazzi's findings, which mentioned concerns about symptoms of exaggeration,

20  but did not indicate what value this opinion was given.  Thus, the ALJ rejected this examining

21  physicians opinion without explanation.  Accordingly, remand is appropriate to allow the ALJ

22  /////

23  /////

24

---

25  [3]  Although counsel for the Commissioner suggests this reason as one the ALJ could have
logically relied upon, this court cannot supply the reason for the ALJ.  Rather, the ALJ must state
his finding rejecting the doctor's opinions and articulate "clear and convincing" reasons for

26  doing so.  *Lester*, 81 F.3d at 831. That was not done here.

1   to resolve the conflict between the medical opinions of record.  *Lewis v. Apfel*, 236 F.3d 503, 509

2   (9th Cir. 2001) (the ALJ is responsible for resolving conflicts in medical testimony).[4]

3   IV.   <u>CONCLUSION</u>

4        Based on the foregoing, IT IS ORDERED that:

5        1.  Plaintiff's motion for summary judgment is granted;

6        2.  The Commissioner's cross-motion for summary judgment is denied;

7        3.  The Clerk is directed to enter judgment in plaintiff's favor; and

8        4.  The matter is remanded for further proceedings consistent with this opinion.

9   DATED:  September 25, 2013.

10

11                     EDMUND F. BRENNAN
                       UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24  _____

25  [4]  Plaintiff also argues that the ALJ erred in finding that plaintiff was not credible, which was based, in part, on Dr. Regazzi's concern that plaintiff may be exaggerating symptoms.  As further consideration of the medical record may impact the ALJ credibility determination, the

26  court declines to address this argument.